UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMICA MUTUAL INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. |
| MICHELE MATTHEIS, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Serve: Michele Mattheis<br>3600 East Springfield, #36<br>Chandler, AZ 85248 | ) |
| and | ) |
| JASON PAUL, | ) |
| Serve: Jason Paul<br>929 Honor Camp Lane<br>Fordland, MO 65652 | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff, Amica Mutual Insurance Company, by and through undersigned counsel, pursuant to 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure and for its Complaint for Declaratory Judgment, states as follows:

**PARTIES**

1.     Amica Mutual Insurance Company ("Plaintiff") is a corporation organized and existing under the laws of the State of Rhode Island, with its principal place of business in Lincoln, Rhode Island.

2. Defendant Michele Mattheis was, at all relevant times, a citizen of Missouri and/or Arizona. At all times material hereto, Defendant Mattheis was the named insured on policies of insurance issued by Plaintiff.

3. Defendant Jason Paul was, at all relevant times, a citizen of Missouri.

## JURISDICTION

4. This Court has subject matter jurisdiction under 28 U.S.C. §1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of costs, interests, and attorney's fees, and there exists complete diversity of citizenship.

## GENERAL ALLEGATIONS

5. Plaintiff brings this action seeking an interpretation of the insurance policies described below and a declaration of the rights and obligations of the parties thereunder.

6. An actual justiciable controversy exists between Plaintiff and Defendants and litigation as to this controversy is imminent and inevitable. Resolution of matters raised in this action will dispose of all issues between the parties under the insurance policies issued by Plaintiff.

7. All necessary and proper parties are before the Court for the matters in controversy, and there is no other litigation between the parties concerning their rights and obligations under the insurance policies issued by Plaintiff.

8. Plaintiff has complied with all conditions precedent under the insurance policies and has no other adequate remedy at law.

### INSURANCE POLICIES ISSUED BY PLAINTIFF

9. Plaintiff issued an automobile policy, policy number 9710243013 ("Auto Policy"), to Defendant Mattheis with a policy period of October 15, 2016 to October 15, 2017. *See* Exhibit 1, a true and accurate copy of the Policy, attached hereto and incorporated herein.

10. Plaintiff issued a homeowner's policy, policy number 6710241036 ("Homeowner's Policy"), to Defendant Mattheis with a policy period of October 15, 2016 to October 15, 2017. *See* Exhibit 2, a true and accurate copy of the Policy, attached hereto and incorporated herein.

### GROUNDS FOR DECLARATORY JUDGMENT

11. On or about April 7, 2017, Defendant Mattheis was involved in an accident while driving a 2014 Honda Accord, which is the insured vehicle identified on the Auto Policy.

12. Defendant Mattheis rented a 2017 Ford Fusion rental car from Enterprise Rent-A-Car after her 2014 Honda Accord was damaged in the April 7, 2017 accident.

13. On or about April 22, 2017, Defendant Paul was driving the rented 2017 Ford Fusion alone, without Defendant Mattheis in the car, and encountered a police checkpoint. Defendant Paul drove through the police checkpoint without stopping. Police pursued Defendant Paul and eventually stopped the car by utilizing a spike strip to disable the vehicle. Defendant Paul was arrested after the car was disabled.

14. Defendant Paul later contacted Plaintiff to make an insurance claim under Defendant Mattheis' insurance policies ("Loss 1"). Defendant Paul alleged that, after arresting him, the arresting officers improperly stole $5,000 in cash, $10,000 in checks and money orders, and various personal property items belonging to both he and Defendant Mattheis, including

jewelry, electronics, clothes, sunglasses, a watch, shoes, cologne, prescription drugs, and a firearm and ammunition.

15. On or about April 29, 2017, Defendant Mattheis rented a 2017 Nissan Frontier from Budget Rent-A-Car. Defendant Paul was not listed as an additional driver of the vehicle.

16. On or about May 3, 2017, Defendant Paul was driving the 2017 Nissan Frontier without Defendant Mattheis' permission and crashed the car into a Jimmy Johns sandwich shop ("Loss 2").

17. Throughout May 2017, representatives for Plaintiff attempted to contact Defendant Mattheis and Defendant Paul regarding Loss 1 and Loss 2, but Defendants were largely unresponsive to the contact attempts.

18. On or about May 5, 2017, Plaintiff hired an investigator to investigate the facts and circumstances surrounding Loss 1 and Loss 2 and to obtain statements of Defendants.

19. Throughout May and June 2017, the investigator made numerous attempts to obtain statements from Defendants, but Defendants failed to cooperate in the investigation by failing to provide statements and avoiding contact attempts from the investigator.

20. On May 22, 2017, the investigator spoke with a detective with the police department. The detective informed the investigator that the complete list of items confiscated from Defendant Paul after his arrest during Loss 1 was approximately $4,300 in cash, a set of brass knuckles, marijuana, and beer. The detective further informed that no jewelry or cashier checks had been confiscated from Defendant Paul or from the vehicle driven by Defendant Paul during Loss 1.

21. On or about May 30, 2017, Defendant Mattheis purchased a 2016 Lincoln MKZ for $27,142 in cash. Defendant Mattheis represented to the salesperson that Defendant Paul was

her boyfriend. Defendant Mattheis titled the 2016 Lincoln MKZ in her name only. Defendant Mattheis did not notify Plaintiff of the purchase of the 2016 Lincoln MKZ.

22. On or about June 4, 2017, Defendant Paul was driving the 2016 Lincoln MKZ without Defendant Mattheis' permission and was involved in an accident at an intersection with a 1998 Honda CRV which caused damage to the 2016 Lincoln MKZ ("Loss 3"). Defendant Paul told the responding police officer that he had the green light when entering the intersection. The driver of the 1998 Honda CRV as well as two other drivers at the intersection that witnessed the accident told the responding police officer that the driver of the 1998 Honda CRV had the green light and that Defendant Paul ignored a red light while accelerating through the intersection and striking the 1998 Honda CRV.

23. Later in June 2017, the investigator hired by Plaintiff was advised by a police officer that the same 2017 Lincoln MKZ which was driven by Defendant Paul during Loss 3 was involved in another accident on June 14, 2017 ("Loss 4"). The investigator was informed that Defendant Mattheis was operating the vehicle during Loss 4.

24. Plaintiff made numerous attempts to contact Defendants Mattheis and Paul through the summer of 2017 regarding Loss 1, Loss 2, Loss 3, and Loss 4, including sending numerous correspondence, making telephone calls, leaving voice messages, and sending text messages requesting that Defendants contact Plaintiff and provide documentation and information pertaining to the losses, but Defendants failed to substantively respond or cooperate with Plaintiff's investigation.

25. Additionally, the investigator hired by Plaintiff made numerous attempts to speak with Defendants Mattheis and Paul throughout the summer of 2017 regarding Loss 1, Loss 2,

5

Loss 3, and Loss 4, yet received little contact or cooperation from the Defendants in the investigation into the losses.

26.     Defendant Mattheis did eventually inform the investigator that she did not have any personal items in the 2017 Ford Fusion at the time it was involved in Loss 1. Defendant Mattheis also informed the investigator that Defendant Paul was not her boyfriend and that Defendant Paul had stolen Defendant Mattheis' identity.

27.     At the end of July 2017, Plaintiff issued reservation of rights letters to Defendant Mattheis concerning each of the claims made under her Auto Policy and Homeowner's Policy. The reservation of rights letters included a request for Defendant Mattheis to provide a sworn proof of loss for each of the claims.

28.     Defendant Mattheis failed to provide the requested sworn proof of loss and did not respond in any manner to Plaintiff's request.

29.     Plaintiff requested that Defendant Mattheis produce certain documents and submit to examination under oath to be taken on November 8, 2017.

30.     Defendant Mattheis failed to contact Plaintiff, failed to produce the requested documents, and failed to appear for her examination under oath on November 8, 2017.

**RELEVANT POLICY PROVISIONS**

31.     The following provisions, *inter alia*, of the Auto Policy apply and bar coverage in this case:

**PERSONAL AUTO POLICY**

\*\*\*

**PART E – DUTIES AFTER AN ACCIDENT OR LOSS**

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

6

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

    **1.** Cooperate with us in the investigation, settlement, or defense of any claim or suit.

    **2.** Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

    **3.** Submit, as often as we reasonably require;

        **a.** To physical exams by physicians we select. We will pay for these exams.

        **b.** To examination under oath and subscribe the same.

    **4.** Authorize us to obtain:

        **a.** Medical reports; and

        **b.** Other pertinent records.

    **5.** Submit a proof of loss when required by us.

***

**PART F – GENERAL PROVISIONS**

**Fraud**

We do not provide coverage for any **insured** who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

***

32. The following provisions, *inter alia*, of the Homeowner's Policy apply and bar coverage in this case:

## HOMEOWNERS 4 – CONTENTS BROAD FORM

\*\*\*

**DEFINITIONS**

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and

    **1.** The spouse; or

    **2.** One party who, with the **named insured**, has entered into a civil union recognized under the laws of any state; or

    **3.** One party who, with the **named insured,** has entered into a domestic partnership recognized under the laws of any state;

if a resident of the same household.

\*\*\*

**B.** In addition, certain words and phrases are defined as follows:

\*\*\*

    **5.** **"Insured"** means:

        **a.** You and residents of your household who are:

            **(1)** Your relatives; or

            **(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

\*\*\*

**SECTION I – PROPERTY COVERAGES**

    **A.** **Coverage C – Personal Property**

        **1.** **Covered Property**

        We cover personal property owned or used by an **insured** while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

      **a.**    Others while the property is on the part of the **residence premises** occupied by an **insured**; or

      **b.**    A guest or a **residence employee**, while the property is in any residence occupied by an **insured**.

***

## SECTION I – CONDITIONS

***

**C.**    **Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an insured seeking coverage, or a representative of either:

**1.**    Give prompt notice to us or our agent;

**2.**    Notify the police in case of loss by theft;

**3.**    Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **C.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

**4.**    Protect the property from further damage.  If repairs to the property are required, you must:

      **a.**    Make reasonable and necessary repairs to protect the property; and

      **b.**    Keep an accurate record of repair expenses;

**5.**    Cooperate with us in the investigation of a claim;

**6.**    Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss.  Attach all bills, receipts and related documents that justify the figures in the inventory;

**7.**    As often as we reasonably require:

      **a.**    Show the damaged property;

  **b.** Provide us with records and documents we request and permit us to make copies; and

  **c.** Submit to examination under oath, while not in the presence of another **insured**, and sign the same;

**8.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

  **a.** The time and cause of loss;

  **b.** The interest of all insureds and all others in the property involved and all liens on the property;

  **c.** Other insurance which may cover the loss;

  **d.** Changes in title or occupancy of the property during the term of the policy;

  **e.** Specifications of damaged buildings and detailed repair estimates;

  **f.** The inventory of damaged personal property described in 6. above;

  **g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

  **h.** Evidence or affidavit that supports a claim under C.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages, stating the amount and cause of loss.

***

**Q.** **Concealment or Fraud**

We provide coverage to no **insureds** under this policy if, whether before or after a loss, an **insured** has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

\*\*\*

33. Based on its investigation of the facts and circumstances surrounding the multiple losses and loss dates and the terms, conditions, definitions, and exclusions of the Auto Policy and/or Homeowner's Policy, Plaintiff reasonably concluded that either or both Defendants failed to cooperate and comply with their duties after a loss as required under the Auto Policy and/or the Homeowner's Policy by, including, but not limited to, failing to cooperate with Plaintiff in its investigation, failing to provide Plaintiff with prompt notice of the losses, failing to notify the police of an alleged theft, failing to provide requested information concerning the losses, failing to provide Plaintiff with requested documentation concerning the losses, failing to submit to examination under oath, failing to submit a proof of loss, and other related matters. Either or both Defendants' failure to comply with their duties has prejudiced Plaintiff's rights under the Auto Policy and the Homeowner's Policy and as such, Defendants are barred from recovery under the Auto Policy and/or Homeowner's Policy and no coverage for the claimed losses exists.

34. Based on its investigation of the facts and circumstances surrounding the multiple losses and loss dates and the terms, conditions, definitions, and exclusions of the Auto Policy and/or Homeowner's Policy, Plaintiff reasonably concluded that either or both Defendants failed to comply with the provisions and conditions of the Auto Policy and/or Homeowner's Policy by, including, but not limited to, making fraudulent and/or false statements, engaging in fraudulent conduct in connection with the losses, intentionally concealing and/or misrepresenting facts in connection with the losses, and other related matters.

35. Plaintiff has sustained damage as a result of either or both Defendants' fraud, concealments and/or misrepresentations, and/or breach of the Auto Policy and/or Homeowner's Policy conditions in that the Plaintiff has incurred substantial expenses for claim response,

11

investigation, adjusting, and evaluating, as well as costs for court reporters, and photocopies. Moreover, Plaintiff has incurred substantial costs for attorneys' fees and other expenses, which continue to accrue. Plaintiff is entitled to recoup and/or recover the amount of said costs and expenses from Defendants.

36. Following the losses, either or both Defendants concealed and/or misrepresented material facts and circumstances relating to the insurance and breached numerous conditions of the Policy, including but not limited to their duties after a loss. Therefore, no coverage exists for Defendants under the Auto Policy and/or Homeowner's Policy for any of the four losses.

WHEREFORE, Plaintiff Amica Mutual Insurance Company, respectfully requests that this Court: (1) determine the rights and obligations of the parties under the Auto Policy and Homeowner's Policy and enter a judgment construing the policies, including the applicable coverage provisions, exclusions, and conditions thereunder, in favor of Plaintiff; (2) declare that Plaintiff is entitled to recover the amount of expenses incurred in investigation, adjustment, and evaluation of the claim, and attorneys' fees; and (3) for any and all such further relief that this Court deems just and proper under the circumstances.

                    Respectfully submitted,

                    /s/ Robert W. Cockerham
                    Robert W. Cockerham, #31984
                    COCKERHAM & ASSOCIATES, L.L.C.
                    10803 Olive Blvd.
                    St. Louis, Missouri 63141
                    (314) 621-3900
                    (314) 621-3903 Facsimile
                    rcockerham@cockerhamlaw.com
                    Attorneys for Plaintiff